UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                  Case No. 3:25-CR-00094-CCB-SJF

GREGORY HILLIARD

## OPINION AND ORDER

Defendant Gregory Hilliard was indicted on one charge of possessing a firearm as a convicted felon, violating 18 U.S.C. § 922(g)(1). (ECF 1). Mr. Hilliard moves to dismiss the indictment on the grounds that 18 U.S.C. § 922(g)(1) violates the Second Amendment, both facially and as applied to him. (ECF 21). The Government opposes this motion. (ECF 23).

### BACKGROUND

On November 12, 2025, a grand jury charged Mr. Hilliard with unlawfully possessing a firearm as a felon under 18 U.S.C. § 922(g)(1). (ECF 1). Mr. Hilliard was previously convicted of Criminal Deviate Conduct, a Class A Felony under Indiana Code § 35-42-4-2 and Aggravated Battery, a Class B Felony under Indiana Code § 35-42-2-1.5. (ECF 11 at 4).

### DISCUSSION

Mr. Hilliard challenges § 922(g)(1) both facially and as applied to him. To bring a facial challenge successfully, a defendant must show the statute is unconstitutional in all applications. *See City of L.A. v. Patel*, 576 U.S. 409, 415, 418 (2015); *Lukaszczyk v. Cook*

*Cnty.*, 137 F.4th 671, 673–74 (7th Cir. 2025). To succeed on an as-applied challenge, a defendant must show the statute is unconstitutional as applied to the facts of his case. *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). If Mr. Hilliard cannot show that the statute is unconstitutional at least as applied to him, then it cannot be facially unconstitutional. *See United States v. Rahimi*, 602 U.S. 680, 693 (2024); *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *United States v. Regalado*, 709 F. Supp. 3d 619 (N.D. Ind. 2023). Furthermore, the Seventh Circuit has recently held that 922(g)(1) is facially constitutional. *See United States v. Watson*, No. 24-2432, 2026 WL 905433 (7th Cir. Apr. 2, 2026). Therefore, the Court will focus on Mr. Hilliard's as-applied challenge.

### A.  The *Bruen* Test

In *New York State Pistol and Rifle Association v. Bruen*, the Supreme Court provided a two-prong framework to evaluate whether a firearm regulation violates the Second Amendment. 597 U.S. 1 (2022). First, courts must determine whether "the plain text of the Second Amendment" protects an individual's conduct. *Id.* at 31. If it does, the conduct is presumptively protected. *Id.* at 17. *Bruen*'s second step then requires the Government to justify regulation of that presumptively protected conduct by "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Two years later, the Court supplied additional guidance for the *Bruen* analysis, noting that when evaluating the historical record, courts need not find  a "dead ringer" or "historical twin." *Rahimi*, 602 U.S. at 692 (2024). Instead, the

2

comparator statute must merely be "analogous enough to pass constitutional muster" by "comport[ing] with the principles underlying the Second Amendment." *Id.*

### B. Mr. Hilliard is part of "the people" according to the Second Amendment's plain text

Mr. Hilliard argues that even as a felon, he is a member of "the people" protected by the Second Amendment. The Seventh Circuit has recently held that felons are part of "the people" within the meaning of the Second Amendment and are thus afforded Second Amendment protection. *United States v. Watson*, No. 24-2432, 2026 WL 905433, at *5 (7th Cir. Apr. 2, 2026) (holding that "[f]elons . . . are part of 'the people' as members of our national 'political community'" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008))). Based on this ruling, the Court is persuaded that Mr. Hilliard is part of "the people" within the meaning of the Second Amendment.

### C. § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulations

The Government argues that § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulations because it is analogous to historical laws. In support, it points the Court to four categories of 18th, 19th, and 20th century laws: laws disarming dangerous persons, Founding-era disarmament laws, Founding-era criminal laws, and felon disarmament laws.

First, the Government asserts that American legislatures have historically disarmed classes of individuals they deemed "dangerous." For example, the Ohio Supreme Court upheld a law that categorically prohibited tramps from possessing firearms, reflecting a view that they posed a danger to the public. *See Watson*, 2026 WL

3

905433, at *8 (quoting *State v. Hogan*, 58 N.E. 572, 575 (1900)); *see also State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886) (upholding a ban on carrying weapons while intoxicated because it attempts to prevent the "mischief to be apprehended from an intoxicated person going abroad with firearms."). The Government also points out that American legislatures disarmed individuals convicted of various crimes during the Revolutionary War. *Regalado*, 709 F. Supp. at 630. And it highlights the example of the Anti-Federalists, who during the Founding era proposed a bill of rights that would have prohibited "disarming the people or any of them, unless for crimes committed, or real danger of public injury from individuals." *Rahimi*, 602 U.S. at 757 (Thomas, J., dissenting) (citing 2 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION 598 (Merrill Jensen ed., 1976)). This demonstrates that legislatures could disarm persons with a "willingness to disobey the law." *See Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 101–03 (3d Cir. 2023) (en banc) (Krause, J., dissenting) (explaining a Massachusetts law from the 1630s which disarmed supporters of a preacher who did not have a "propensity for violence" but showed a "willingness to disobey the law").

The Government also emphasizes that American colonial legislatures authorized capital punishment and forfeiture of property for even nonviolent offenses like counterfeiting, smuggling tobacco, and horse theft. (ECF 23 at 15–16). It argues that these penalties support the "lesser restriction" of disarming felons. (*Id.* at 14 (citing *Rahimi*, 602 U.S. at 699)). *Watson* supports this argument. *See* 2026 WL 905433, at *9–10 (finding that Founding-era capital punishment for felonies provides "some historical support that the legislature had the power to permanently disarm dangerous felons.").

The Court is persuaded that if the death penalty and property forfeiture were permissible, then the lesser restriction of disarmament was also historically and traditionally permissible.

The Government has provided Founding-era and postratification disarmament regulations which are sufficiently analogous to § 922(g)(1) to support its ties to regulations in this Nation's history and tradition. As it has in past cases, the Court finds § 922(g)(1) consistent with this Nation's history and tradition of firearm regulation. *See United States v. Decker*, No. 2:22-CR-29-PPS-JEM, 2025 WL 1589298, at *4 (N.D. Ind. June 5, 2025) (collecting cases).

### D. The facts of Mr. Hilliard's case do not render § 922(g)(1) unconstitutional as applied

There are two primary approaches to how courts have treated § 922(g)(1) after performing a *Bruen* analysis of the history. Some courts have held that § 922(g)(1) is constitutional as applied to all felony convictions, thereby categorically rejecting as-applied challenges. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) ("[W]e conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) ("[W]e [uphold] the constitutionality of § 922(g)(1) without drawing constitutional distinctions based on the type of felony involved.").

Other courts have found that a proper reading of the history does not support a categorical rule, instead requiring a more fine-tuned analysis into whether the specific predicate felony involved in a § 922(g)(1) prosecution could indicate dangerousness, the

5

historical grounding principle for most firearms regulation. *See United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (holding that "district courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction."); *Range v. Att'y Gen.*, 124 F.4th 218, 230 (3d Cir. 2024) (stating that "we refuse to defer blindly to § 922(g)(1) in its present form" and rejecting the Government's attempt to "stretch dangerousness to cover all felonies"); *United States v. Mitchell*, 160 F.4th 169, 194 (5th Cir. 2025) ("[W]e hold that § 922(g)(1) is unconstitutional as applied to Mitchell's § 922(g)(3) predicate offense.").

Shortly after Mr. Hilliard filed this motion, the Seventh Circuit decided *Watson*. *See* 2026 WL 905433, at *1. While *Watson* held that § 922(g)(1) is facially constitutional, the court explicitly declined to decide the constitutionality of § 922(g)(1) as applied to non-violent felons. *Id.* at *11 ("We reserve ruling on an as-applied challenge to § 922(g)(1) under the Second Amendment by a felon whose predicate felony offense is not 'dangerous.'"); *see also United States v. Prince*, No. 23-3155, 2026 WL 905432, at *2 (7th Cir. Apr. 2, 2026) ("[W]e reserve decision on as-applied challenges by persons whose felony convictions do not suggest that firearms would be dangerous in their hands."). Therefore, whether § 922(g)(1) may be constitutionally applied to non-violent offenders remains an open question in this circuit.

But this Court need not take a position on that issue because even with a more granular analysis that evaluates the nature of predicate felonies, § 922(g)(1) is constitutional as applied to Mr. Hilliard. As the Government has shown, legislatures

historically disarmed categories of individuals based on their perceived danger to the public. Thus, the question here is whether Mr. Hilliard's felony convictions place him within those historically recognized "dangerous" categories. Even courts of appeals that explicitly allow as-applied challenges to § 922(g)(1) observe that crimes that are "not strictly crimes against the person" may nevertheless be considered dangerous if they "pose a significant threat of danger" under a granular constitutional analysis of § 922(g)(1). *Williams*, 113 F.4th at 659 (6th Cir. 2024); *see also United States v. Walters*, No. 22-1812, 2025 WL 2536696, at * 7–9 (3d Cir. 2025); *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) ("Governments may keep firearms out of the hands of dangerous people who are apt to misuse them" (citing *Bruen*, 597 U.S. at 26)).

Mr. Hilliard argues that § 922(g)(1) is unconstitutional as applied to him because there is no Founding-era history or tradition of permanently disarming individuals based on long-ago convictions like his. (ECF 21 at 13). In support, he notes that his conviction occurred nearly twenty-three years ago. (*Id.*) According to Mr. Hilliard, without a "judicially imposed, present-tense finding of dangerousness," a "categorical lifelong ban on firearm possession" is not constitutional. (*Id.* at 14). But Mr. Hilliard's crimes are indicative of dangerous behavior. One of Mr. Hilliard's predicate felony convictions was for Criminal Deviate Conduct under Indiana Code § 35-42-4-2. A conviction under this statute is a Class A felony when "(1) it is committed by using or threatening the use of deadly force; (2) it is committed while armed with a deadly weapon; [or] (3) it results in serious bodily injury to any person other than a defendant . . . ." Indiana Code § 35-42-4-2. Mr. Hilliard's second predicate felony

conviction was for Aggravated Battery as a Class B Felony under Indiana Code § 35-42-2-1.5. The statute requires that the offender knowingly or intentionally inflict "injury on a person that creates a substantial risk of death or causes (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus." Indiana Code § 35-42-2-1.5. Although his felony convictions are over twenty years old, they were violent sexual crimes committed using a firearm. During their commission, Mr. Hilliard threatened his victim with a handgun. (ECF 23-1 at 2; ECF 23 at 2). After the victim refused to submit to sexual deviate conduct, Mr. Hilliard pushed the victim down the stairs, breaking the victim's arm and causing substantial injury. (ECF 23 at 2).

Relying on *United States v. Jennings*, Mr. Hilliard argues that temporally remote convictions should be "given less weight." (ECF 21 at 15) (citing *United States v. Jennings*, 754 F. Supp. 3d 763, 770 (E.D. Mich. 2024)). But the age of a felony conviction is not dispositive in the analysis, and even *Jennings* does not support that position. *Jennings*, 754 F. Supp. 3d at 770 ("If [the armed robbery conviction] were Jennings' only prior conviction, and if in the intervening years he had proven himself to be a model citizen, Jennings *might* be able to carry his burden of showing non-dangerousness." (emphasis added)).

Courts performing a more granular analysis instead primarily focus on the violent nature of the predicate felony conviction, not its age. While some courts consider the remoteness or recency of a conviction as a factor, other courts do not consider it at all. *Contrast United States v. Eason*, No. 1:22-CR-65-HAB, 2024 WL 639350,

at *6 (N.D. Ind. Feb. 15, 2024) *and United States v. Guerra*, No. SA-22-CR-457-XR, 2024 WL 3831201, at *2 (W.D. Tex. Aug. 13, 2024) ("[A]lthough the predicate convictions occurred decades ago, the Defendant has been previously convicted of serious, dangerous offenses.") *with United States v. Roberts*, 710 F. Supp. 3d 658, 669 (D. Alaska 2024) *and United States v. Butler*, No. 3:21-CR-74-CCB-SJF, 2025 WL 3207162 (N.D. Ind. Nov. 17, 2025).

Accordingly, the inquiry does not turn on the age of Mr. Hilliard's convictions, but on whether they show he falls within the class of individuals historically deemed dangerous. The historical tradition of disarming such groups was "based on a broader belief that they are untrustworthy adherents to the law, not because they were at risk of committing a particular crime." *United States v. Head*, 734 F. Supp. 3d 806, 825 (N.D. Ill. 2024). Applying this historical tradition, the Court finds that Mr. Hilliard is the type of "dangerous" person our Nation has a history and tradition of disarming. *Prince*, 2026 WL 905432, at *1 ("The existence of a felony conviction is another plausible indicator of danger."); *Seeboth v. Allenby*, 789 F.3d 1099 (9th Cir. 2015) (citing *Thielman v. Leean,* 282 F.3d 478, 485 (7th Cir. 2002)) ("[I]t is not unreasonable to conclude, as the Seventh Circuit has, that a state rationally may decide that sexually violent crime is qualitatively more dangerous than other kinds of violent crime."). The Court thus rejects Mr. Hilliard's as-applied challenge.

## CONCLUSION

For these reasons, Mr. Hilliard's Motion to Dismiss the Indictment is **DENIED**.

(ECF 21).

SO ORDERED on April 20, 2026.

/s/ *Cristal C. Brisco*

CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

10